UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD G. FEARS, JR.,

      Plaintiff,

      v.

ANDREW SAUL, COMMISSIONER,

      Defendant.

**Hon. Hugh B. Scott**

**18CV1078**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 6 (plaintiff), 11 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is no longer entitled to disability insurance benefits and/or Supplemental Security Income benefits as of October 31, 2014. The parties consented to proceed before a Magistrate Judge (Docket No. 15).

## PROCEDURAL BACKGROUND

The plaintiff ("Donald Fears" or "plaintiff") was found disabled on October 26, 2010, as of April 1, 2010 [R. 10]. October 26, 2010, was the comparison point decision (or "CPD") date [R. 12]. On October 31, 2014, plaintiff was found to be no longer disabled [R. 10]. After that

termination was upheld administratively, plaintiff appeared before an Administrative Law Judge ("ALJ") on September 9, 2016, who considered the case <u>de novo</u> and concluded, in a written decision dated June 27, 2017, that plaintiff's disability ended as of October 31, 2014 [R. 10]. The ALJ's decision became the final decision of the Commissioner on August 1, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 3, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 6, 11), and plaintiff duly replied (Docket No. 14). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 41-year-old on October 31, 2014, with a high school education, last worked as a short order cook [R. 20]. At the time of the October 2010 CPD, plaintiff had the following impairments deemed severe by the ALJ: arteriovenous malformation (or AVM) (status-post gamma knife surgery); deep vein thrombosis, and status-post hemicraniectomy with failed bone flap graft [R. 12]. These impairments were found to result in a residual functional capacity to lift/carry less than 10 pounds, stand/walk less than two hours in an eight-hour workday; sit about six hours in a workday; occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; he could never climb ladders, ropes, or scaffolds or balance; and avoid concentrated exposure to extreme cold or heat, vibration, fumes, odors, dust, gases, poor ventilation, and avoid all exposure to hazards [R. 12; 99-104]. Up to June 27, 2017, plaintiff had not engaged in substantial gainful activity [R. 12].

The ALJ found that the medical record, as of October 31, 2014, indicated that plaintiff had impairments for AVM (status-post gamma knife surgery); deep vein thrombosis; status-post hemicraniectomy with failed bone graft; bilateral hip replacement; lumbar degenerative disc disease; seizure disorder; sleep apnea; and right arm nerve damage [R. 12]. The ALJ, however, found that as of the CPD the severity of these impairments had decreased [R. 14]. Since October 31, 2014, plaintiff's RFC had increased [R. 15]. Beginning on October 31, 2014, plaintiff had severe impairment or combination of impairments, that he had right upper extremity symptoms, seizure disorder (but with episodes not as frequent as alleged), sleep apnea, and underwent bilateral hip replacements [R. 15],

## MEDICAL AND VOCATIONAL EVIDENCE

Following the 2010 disability finding, plaintiff had bilateral hip replacement with right hip replacement on March 2014 [R. 109]. On October 29, 2014, Dr. Saeeda Siddiqui evaluated plaintiff following the hip replacement procedure and found that plaintiff could never stoop [R. 619, 622]. Dr. J. Dale found on February 11, 2015, "significant medical improvement related to the [plaintiff's] ability to work has been demonstrated therefore disability is ceased" [R. 109, 112]. Dr. Dale also found that plaintiff had limitations that he should never stoop [R. 109]. Both doctors acknowledged that plaintiff used a cane intermittently [R. 109, 619]. In June 2015, Meggan Shea, F.N.P., treated plaintiff and opined that plaintiff could occasionally stoop [R. 673, 19]; the ALJ gave some weight to Shea's opinion, noting her minimal treatment history with plaintiff and that, as a nurse practitioner, she was not accepted as a medical source [R. 19].

Plaintiff had medical improvement as of October 31, 2014, with a decrease in medical severity of the impairments and plaintiff's headaches and seizures were managed without ongoing difficulties [R. 13-14]. The ALJ found that plaintiff's impairments as of that date did not meet or equal the severity of listed impairments in the Social Security regulations, specifically Listings 1.02, 1.04, 4.00, 11.00, and 11.02 [R. 12-13]. The ALJ found that plaintiff now had a residual functional capacity (or "RFC") to perform a full range of sedentary work, but with no climbing of ladders, ropes, or scaffolds, or crawling and frequent handling or fingering with the right hand [R. 14, 15]. Plaintiff is no longer precluded from all balancing and does not require environmental restrictions [R. 15]. Plaintiff has severe impairments since October 31, 2014 [R. 15].

The ALJ found that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment as of October 31, 2014 [R. 16]. Plaintiff admitted that he had no difficulty with personal care activities, preparing meals, cleaning, washing laundry, using public transportation, going out alone, shopping, handling his finances, or socializing [R. 16, 247-51, 53-55]. Plaintiff later testified that he had leg and back pain that hindered him from washing dishes and taking showers and walking for a distance [R. 57-58]. Plaintiff stated that he was a flag and touch football coach, but he could stand for a bit then required to sit down while coaching [R. 54, 58]. On October 2014, Dr. S. Siddiqui conducted a consultative examination and opined that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, stand or walk for two hours in an eight-hour workweek, and sit for six hours in a workday [R. 18, 618].

The ALJ found that beginning on October 31, 2014, plaintiff was unable to perform past relevant work as a short order cook (light exertional level) because the exertional demands of that job exceed his residual functional capacity [R. 19-20]. With this capacity, age, education, experience, and the inability to perform plaintiff's past work, under Medical-Vocational Rule 201.28, plaintiff would be deemed not disabled [R. 20]. Plaintiff's ability to perform all or substantially all the requirements for sedentary work, however, has been impeded by additional limitations [R. 20]. As a result, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as order clerk or addresser [R. 20]. The ALJ reported that the expert found 4,000 jobs in the national economy as an order clerk and 7,000 jobs as an addresser [R. 20, 70-71]. As a result, the ALJ held that plaintiff was not disabled on October 31, 2014 [R. 20-21].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.  General Standards—Continuation of Benefits Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the plaintiff from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is continuing to suffer from a disability, the ALJ must employ multiple step analysis under Title II for disability (8 steps) or Title XVI for Supplemental Security Income (7 steps), 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). These steps are like the five steps used to initially determine disability, 20 C.F.R. §§ 404.1520 & 416.920; see Berry, supra, 675 F.2d at 467. For Title II disability, the steps are

1. Whether the claimant engaged in substantial gainful activity;
2. Whether the claimant suffers from a severe impairment that equals or meets a listed impairment in the Social Security regulations;
3. Whether there has been medical improvement;
4. If there has been a medical improvement, whether it is related to the claimant's ability to do work, whether the residual functional capacity has increased;

5. If there has been no medical improvement, whether exception under the regulations are applicable;
6. Whether, with any medical improvement, if all current impairments in combination are severe;
7. If impairments are severe, whether the claimant can perform substantial gainful activity; and
8. If unable to perform past work, whether the claimant can do other work given their residual functional capacity.

20 C.F.R. § 404.1594(f).

For Supplemental Security Income Title XVI claims, similar seven steps are

1. Whether the claimant suffers from a severe impairment that equals or meets a listed impairment in the Social Security regulations;
2. Whether there has been medical improvement;
3. If there has been a medical improvement, whether it is related to the claimant's ability to do work, whether the residual functional capacity has increased;
4. If there has been no medical improvement, whether exception under the regulations are applicable;
5. Whether, with any medical improvement, if all current impairments in combination are severe;
6. If impairments are severe, whether the claimant can perform substantial gainful activity; and
7. If unable to perform past work, whether the claimant can do other work given their residual functional capacity.

20 C.F.R. § 416.994(b)(5).

If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1594(f) & 416.994(b)(5); see also Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. See Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1594(f)(7) &

416.994(b)(5)(vii). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994)

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying continued disability coverage. Plaintiff argues that the ALJ erred at Step Eight for his Title II claim and Step Seven of his Title XVI claim because jobs did not exist in significant numbers that plaintiff could perform (Docket No. 6, Pl. Memo. at 12-14). Plaintiff next argues that the ALJ failed to evaluate properly the opinions of agency physicians Dr. Saedda Siddiqui and Dr. Dale (id. at 14-18). Dr. Siddiqui concluded that plaintiff could perform sedentary work but opined that she could never stoop [R. 618, 619] (id. at 7). The ALJ gave Dr. Siddiqui's evaluation partial weight finding that plaintiff could lift and carry, stand/walk, and sit at sedentary work levels, rejecting the finding that plaintiff could never stoop [R. 18]. Dr. Dale completed a physical residual functional capacity assessment of plaintiff in 2015 and found that he could sustain sedentary work but also finding that he could never stoop [R. 108, 109] (id. at 8). The ALJ also gave partial weight to Dr. Dale's opinion [R. 18]. Plaintiff argues that the ALJ rejected Dr. Dale's opinion merely because it differed from the ALJ's opinion, creating legal error (id. at 16). Finally, plaintiff argues that the ALJ did not develop the record in assigning weight to medical sources and evaluators (id. at 18-20).

I. Jobs in National Economy at the Final Step

At Step Five for the initial determination of disability coverage, the burden of proof is on the Commissioner to show that jobs exist in significant numbers in the national economy that a

claimant can perform, 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). For evaluating whether a claimant remains disabled, however, it is not clear that this burden of proof has shifted to the Commissioner; the eight- or seven-step process there does not have an express provision shifting the burden of proof to the Commissioner. These regulations in other places analogize to the initial application for disability benefits, e.g., 20 C.F.R. § 404.1594(f)(7). Plaintiff here, however, cites to the regulations for the initial application (Docket No. 6, Pl. Memo. at 12) without acknowledging that the continuation process once benefits were awarded may differ.

Social Security regulations and Social Security rulings do not define what is a "significant number," e.g., Hanson v. Comm'r of Soc. Sec., 15CV150, 2016 U.S. Dist. LEXIS 94749, at *38 (N.D.N.Y. June 29, 2016) (Carter, Mag. J.) (Report & Recommendation, collecting cases), aff'd, 2016 U.S. Dist. LEXIS 94405 (N.D.N.Y. July 20, 2016). (Docket No. 6, Pl. Memo. at 12.) Courts have not defined what constitutes a "significant number" and generally holding that what is a significant number is a relatively low threshold number, Gurule v. Astrue, No. 2:11CV96, 2012 U.S. Dist. LEXIS 64507, at *11-13 (D. Vt. May 8, 2012) (collecting cases). Judge Larimer, in Sanchez v. Berryhill, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018), held that "no particular number of positions need be identified: so long as it exists in sufficiently numbers, '[t]he Commissioner need show only one job existing in the national economy that [the claimant] can perform,'" (quoting Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)). In Peach v. Berryhill, 17CV201, 2018 U.S. Dist. LEXIS 148339 (W.D.N.Y. Aug. 30, 2018) (Telesca, J.), Judge Telesca found that 8,991 jobs nationally did not constitute a "significant" number, id. at *8-9 (id. at 13).

9

Plaintiff initially argued that the vocational expert opined that there were "about" 4,000 order clerk or "about" 7,000 addresser jobs nationally [R. 70-71], vaguely opining far less than significant numbers of jobs to meet the Commissioner's burden (Docket No. 6, Pl. Memo. at 13). Defendant adds the two occupations and concludes that the near 11,000 jobs was found to be significant number (Docket No. 11, Def. Memo. at 15), see Sanchez v. Berryhill, 336 F. Supp. 3d 174, 177-78 (W.D.N.Y. 2018) (Larimer, J.) (9,046 total jobs). Upon defendant's response, plaintiff withdraws this argument (Docket No. 14, Pl. Reply at 4). This Court thus need not define the bright line of what constitutes "significant numbers" of jobs a claimant could perform at Step Five of the Five-Step initial application process, especially here where plaintiff presents a continuation of benefits claim and in effect abandons that claim.

II. State Agency Evaluators

Plaintiff argues that the ALJ exceeded his expertise by making medical findings that were contrary to two state agency examiners findings. Specifically, both doctors found that plaintiff could never stoop [R. 109, 619] whereas the ALJ rendered an RFC that found that plaintiff could occasionally stoop [R. 15], posing occasional stooping as part of the hypothetical to the vocational expert [R. 69-70].

A. Dr. Siddiqui

Plaintiff argues that the ALJ erred in disregarding Dr. Siddiqui's observation that plaintiff could never stoop [R. 619] (Docket No. 6, Pl. Memo. at 15, 7). The finding that plaintiff could stoop was not supported by substantial evidence (id. at 15) and the ALJ substituted his lay opinion for that of the medical expert (id. at 16). Defendant responds that the ALJ found that

10

plaintiff could stoop occasionally (Docket No. 11, Def. Memo. at 14) [R. 15 (RFC), 673 (Social Security Medical Source Statement, June 24, 2015)].

The ALJ gave Dr. Siddiqui's opinion partial weight, expressly finding that plaintiff could occasionally stoop [R. 18]. The ALJ does not state a basis for this finding here, but the reasoning applied for a similar finding in the weight given to Dr. Dale's opinion may be the same for the stooping finding for Dr. Siddiqui.

B.  Dr. Dale

Plaintiff also argues that the ALJ erred in relying on his own medical opinion that plaintiff could stoop rather than accepting the findings of Dr. Dale to the contrary (Docket No. 6, Pl. Memo. at 15-16). The ALJ again found that plaintiff could occasionally stoop, giving partial weight to Dr. Dale's finding [R. 18-19]. The ALJ found that "total preclusion from stooping to be unnecessary and unsupported by the record; though the claimant is post-status hip replacements, his physical examinations have been relatively unremarkable" [R. 18-19].

C.  Consideration of these Evaluations

Defendant argues that the ALJ's RFC here ultimately was more restrictive than the opinions of Drs. Siddiqui and Dale (as well as Dr. Samuel Balderman) and that substantial evidence supports this action (Docket No. 11, Def. Memo. at 11).

The only support in the record for finding that plaintiff after his hip replacement surgery could occasionally stoop was nurse practitioner Shea's finding [R. 673], to which the ALJ assigned some weight, accepting so much of her findings as consistent with sedentary work but acknowledging that Shea was not an acceptable medical source [R. 19]. The ALJ did not make an express weight finding as to Shea's statement about plaintiff's ability to stoop. The ALJ also

11

made findings that plaintiff's examinations were relatively unremarkable without an expertise to support it or citation to the medical record to support that finding. The record contains references to plaintiff not being in acute distress during one examination [R. 17, 611 (Dr. Balderman)], having normal motor strength, intact balance, a normal gait [R. 17, 901-15]. As a layperson, the ALJ "is not qualified to assess a claimant's RFC on the basis of bare medical findings," Ortiz v. Colvin, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (Larimer, J.).

A finding as to one function (the ability to stoop) alone may not be harmful enough for remand, especially if the occupations suggested by the vocational expert do not involve that function. The record is unclear whether this is the case. In the argument above recently abandoned by plaintiff about the significance of the number of jobs in the suggested occupations, the ALJ added to the hypothetical posed to the vocational expert occasional stooping [R. 69-70]. One of occupations, addresser, does not have any apparent stooping involved; the other occupation, order clerk, may have occasional stooping. Since the ALJ erred in not accepting more restrictive assessments of plaintiff's physical ability to stoop and passed along that finding as part of the hypothetical, the vocational expert could not opine on appropriate jobs where stooping is not involved. This case **is remanded** for revised findings as to the ability to stoop and the vocational expert's opinion on what occupations (if any) exist that someone like plaintiff with that restriction (among others) could perform in the national economy.

III. Development of Record

In assigning partial weight to the opinions of Drs. Balderman, Siddiqui, and Dale as well as giving some weight to Shea's findings but rejecting limitations on plaintiff's right upper extremity, plaintiff argues that the ALJ erred in not developing the record (Docket No. 6, Pl.

Memo. at 18). Instead, the ALJ relied upon the 2010 opinion of Dr. John Schwab, in part that plaintiff could occasionally stoop (among functions plaintiff could perform) [R. 19, 475-77], an opinion initially rejected by the Social Security Administration [R. 103] (see Docket No. 6, Pl. Memo. at 19). Plaintiff now argues that the ALJ relies upon a stale, rejected medical opinion to support the present denial of disability benefits (id. at 19-20).

The ALJ conceded that Dr. Schwab's opinion predated the issues in this case [R. 19], the CPD of October 26, 2010, and Dr. Schwab's opinion was from a week prior to that start date (see Docket No. 14, Pl. Reply Memo. at 3). Dr. Schwab was evaluating plaintiff for ailments not at issue in plaintiff's present application; those conditions resolved themselves (see Docket No. 11, Def. Memo. at 14; [R. 14]), but plaintiff had the hip replacement and other intervening medical issues since 2010.

Given the remand ordered above, the ALJ also can reconsider the record since October 26, 2010, to see if plaintiff is still disabled, albeit for different impairments from the original ailments, including weighing the medical evidence in record.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 6) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 11) for judgment on the pleadings is **denied**. Plaintiff **remained** disabled after October 31, 2014. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 5, 2020